IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK07-40224 |
| | ) | |
| DON HERBERT and | ) | CH. 7 |
| MARGRET HERBERT, | ) | |
| | ) | |
| Debtors. | ) | |

## **MEMORANDUM**

Hearing was held in Lincoln, Nebraska, on May 2, 2007, on the Motion to Dismiss for Abuse Pursuant to 11 U.S.C. §§ 707(b)(2) and 707(b)(3) filed by the United States Trustee (Fil. #19), and a Resistance filed by Debtors (Fil. #25). Steven P. Vinton appeared for Debtors, and Jerry L. Jensen appeared for the U.S. Trustee. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A).

For the reasons discussed below, this Court finds that a presumption of abuse arises under 11 U.S.C. § 707(b)(2) and that this case should be dismissed or converted to a case under Chapter 13. Further, even if the presumption does not arise, the totality of the circumstances indicate abuse and this case should be dismissed under 11 U.S.C. § 707(b)(3).

### *Background*

On February 5, 2007, Debtors filed their voluntary petition herein, together with their schedules and Form B22A, the statement of current monthly income and means test calculation. According to Debtors' initial calculations, the presumption of abuse under 11 U.S.C. § 707(b)(2) does not arise as a result of the means test calculation. The U.S. Trustee argues that certain adjustments need to be made to Debtors' calculations, and that after such adjustments a presumption of abuse does arise under 11 U.S.C. § 707(b)(2) and the case should be converted to a Chapter 13 proceeding or be dismissed. The U.S. Trustee further argues that even if the presumption does not arise under § 707(b)(2), the totality of the circumstances of Debtors' financial situation demonstrates abuse under § 707(b)(3).

In support of its position, the U.S. Trustee submitted a revised means test form (Fil. #32, Ex. 1). According to the U.S. Trustee's calculations, the presumption of abuse under § 707(b)(2) does arise, Debtors have monthly disposable income of $1,377.78, and 60-month disposable income of $82,666.80. At the hearing, Debtors acknowledged that their means test form did need to be revised in accordance with some of the U.S. Trustee's suggestions, and permission was granted to file an amended means test form subsequent to the hearing. Debtors' modified means test form was filed on May 9, 2007 (Fil. #38).

As a result of Debtors' amended means test form, the disputed issues were narrowed to the following: (1) whether Debtors' current monthly income as reflected in Lines 1-12 of the means test form is required to be Debtors' average monthly income for the six calendar months prior to filing, or whether it should be adjusted to reflect the reduced amount of overtime compensation Debtors have received post-petition; (2) whether Debtors are entitled to deduct for means test purposes their actual rental payment of $600.00 per month, or whether they are limited to the applicable local standard for housing and utilities under Line 20(b) in the amount of $435.00; (3) whether Debtors are entitled to a vehicle ownership deduction for a vehicle owned free and clear of liens; (4) whether Debtors are entitled to deduct on Line 26 of the means test form their monthly 401(k) contributions and loan payments that are withheld from Debtors' payroll; and (5) whether Debtors have properly calculated future payment on secured debts.

## *Discussion*

Form B22A was created to implement the complicated means test calculations of 11 U.S.C. § 707(b). In conducting the means test, the form and the statute require a calculation of a debtor's current monthly income and allow the debtor to deduct for means test purposes expense categories determined by National Standards and Local Standards issued by the Internal Revenue Service. 11 U.S.C. § 707(b)(2)(A)(ii)(I). If, as a result of application of the means test, a presumption of abuse arises, it is possible for a debtor to rebut that presumption. 11 U.S.C. § 707(b)(2)(B)(i) provides:

> In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that [sic] justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

In the event a debtor believes that special circumstances apply, the debtor is required to itemize each additional expense or adjustment of income and provide, among other things, a detailed explanation of the special circumstances that may make such expenses or adjustment to income necessary and reasonable. 11 U.S.C. § 707(b)(2)(B)(ii)(II).

Overtime Pay.

As discussed previously, Debtors and the U.S. Trustee have several issues in dispute. The first such issue is whether Debtors' current monthly income as used in the means test form should be adjusted to reflect the lack of overtime experienced by Debtors post-petition.

The determination of whether a presumption of abuse arises under § 707(b)(2) begins with the calculation of Debtors' "current monthly income." Subject to certain exclusions not applicable here, "current monthly income" means the average monthly income from all sources that Debtors receive during the six-month period immediately preceding the date of bankruptcy filing. 11 U.S.C. § 101(10A). Based on Debtors' actual income for the six-month period prior to filing, Debtors are required to use for means test purposes a total current monthly income figure of $7,275.37 for

purposes of Line 12 of the means test form. Debtors do not dispute the accuracy of that number, but assert that their income was abnormally high during the six-month period prior to filing this case due to overtime hours and that Debtors are no longer receiving the equivalent level of overtime. Debtors have used a figure of $7,177.00 on Line 12 of the means test form, which is $98.37 less than the figure used by the U.S. Trustee. Thus, Debtors believe that their reduction in overtime hours constitutes a special circumstance and justifies adjustment of current monthly income under 11 U.S.C. § 707(b)(2)(B)(I).

As indicated, the Bankruptcy Code specifically delineates two special circumstances: (1) a serious medical condition; or (2) active duty in the Armed Forces. Certainly, those two items are not an exhaustive list, but are examples of what Congress intended to constitute special circumstances. Thus, rebutting the presumption of abuse requires circumstances that are truly special. As one court stated: "Although this presumption may be rebutted, § 707(b) goes on to set this bar extremely high, placing it effectively off limits for most debtors." *In re Haar*, ___ B.R. ___, Case No. 06 31270, 2007 WL 521221, at *1 (Bankr. N.D. Ohio Feb. 20, 2007). *See also In re Ferando*, Case BK06-81855 (Bankr. D. Neb. Mar. 1, 2007) (finding that unusually high commissions earned during the six-month period pre-bankruptcy do not constitute special circumstances); *In re Hanks*, ___ B.R. ___, Case No. 06-22777, 2007 WL 60812 (Bankr. D. Utah Jan. 9, 2007) (finding a job loss and lower income at new employment do not constitute special circumstances); *In re Sparks*, ___ B.R. ___, 2006 WL 3953348 (Bankr. E.D. Tex. Oct. 18, 2006) (comparing special circumstances to an "unanticipated development").

The only special circumstance raised by Debtors is that they earned more overtime pay during the period used for calculating current monthly income then they have experienced post-petition. This is not a situation where Debtors claim that there was a unique opportunity to earn overtime hours during the six-month period used for calculating current monthly income, nor has some circumstance arisen which would cause Debtors to be unable to continue earning overtime income during the term of a Chapter 13 plan. Debtors simply have not identified any special circumstance which would clearly cause Debtors' income to be dramatically different post-petition than what they experienced in the six months pre-petition. Instead, the only circumstance asserted is that Debtors' income fluctuates over time as a result of overtime opportunities. Fluctuations in income are simply a fact of life for those who are paid on an hourly basis and have periodic opportunities to earn overtime income. It is not a special circumstance. Congress presumably took into account potential fluctuations in income when determining that current monthly income should be calculated on a monthly average based on a period of six months, which would help even out the fluctuations.

Accordingly, the post-petition reduction in Debtors' overtime income in this case is not a sufficient "special circumstance" to rebut the presumption of abuse.

Housing Expense.

The second issue in dispute is whether Debtors are entitled to a deduction for their actual housing rental expense versus the local standard on Line 20(b) of the means test form. Again, the means test mandates the use of the local standard for housing. *See* Eugene R. Wedoff, *Means Testing in the New § 707(b)*, 79 Am. Bankr. L.J. 231, 256, 262 (2005) (asserting that the IRS Local Standards take into account local variations in expenditures and act as a cap from which a debtor may not depart). The IRS has determined the local standard for housing in Debtors' locality as $435.00 per month. In order to rebut the presumption under special circumstances, it is up to Debtors to show that their particular circumstances are "special," and not simply the same circumstances faced by any other family in the locality in which Debtors live. *See In re Starkey*, Case No. BK06-81473 (Bankr. D. Neb. Jan. 25, 2007) (holding that living in an expensive area is not a sufficient "special circumstance" under 11 U.S.C. § 707(b)(2)(B)(i) to rebut the presumption of abuse); *In re Tranmer*, 355 B.R. 234, 251 (Bankr. D. Mont. 2006) (stating "[i]n this Court's view, 'special circumstances' does not include debtor's desire to remain living wherever they choose . . . ."); *In re Renicker*, 342 B.R. 304, 310 (Bankr. W.D. Mo. 2006) (no showing that no reasonable alternative exists to the extraordinary transportation and other expenses).

Debtors have failed to show that no reasonable alternative exists with regard to their housing expense. Thus, Debtors are limited to the Local Standard housing expense of $435.00.

Vehicle Ownership Deduction.

The third issue is whether Debtors are entitled to a vehicle ownership deduction for their second vehicle, which they own free and clear of liens. Section 707(b)(2)(A)(ii) provides that "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the category specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . . ."

The Internal Revenue Service Local Standards include both a vehicle operation/public transportation expense for up to two vehicles and a vehicle ownership/lease expense for up to two vehicles. The U.S. Trustee and Debtors agree that the applicable operation/public transportation expense for one vehicle is $358.00 and the ownership/lease expense for one vehicle is $471.00. Debtors' first vehicle is subject to a lien in favor of Bank of the West. The parties do not dispute that the ownership/lease expense for that vehicle needs to be reduced by the average monthly payment for the debt secured by that vehicle.[1] The dispute arises with respect to the second vehicle, which is not subject to a lien. In their amended means test form (Fil. #38), Debtors deducted the IRS Local Standard ownership/lease expense for the second vehicle in the amount of $332.00. The U.S.

---

[1] However, the parties are in disagreement as to the calculation of the average monthly payment, which is addressed in a subsequent section of this Memorandum.

-4-

Trustee takes the position that Debtors are not entitled to a vehicle ownership expense deduction for an unencumbered vehicle.

A debtor's entitlement to a vehicle ownership expense deduction for an unencumbered vehicle is one of the post-BAPCPA issues where there has been a split of authority. Many reported decisions agree with the position taken by the U.S. Trustee. That is, the statute allows deduction of "the debtor's *applicable* monthly expense amount specified under the National Standards and Local Standards . . . ." 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added). According to those courts, if a debtor does not have an ownership expense (*i.e.*, a loan secured by the vehicle or a lease payment), then there is no "expense" that is "applicable" under the Local Standards. *See, e.g., In re Barraza*, 346 B.R. 724, 728-29 (Bank. N.D. Tex. 2006) (debtor not entitled to standard ownership allowance for vehicle without a loan or lease payment); *In re McGuire*, 342 B.R. 608, 613-14 (Bankr. W.D. Mo. 2006) (Chapter 13 debtor is not permitted standard ownership allowance for vehicle owned free and clear of liens).

On the other hand, many courts have come to exactly the opposite conclusion finding effectively that "applicable" is a reference to the local standard, which was allowed as a fixed allowance. *See, e.g., In re Fowler*, 349 B.R. 414, 418-19 (Bankr. D. Del. 2006) (finding that the plain language of the statute allows the deduction even if the car is owned free and clear); *In re Hartwick*, 352 B.R. 867, 868-69 (Bankr. D. Minn. 2006) (finding that the Local Standard is the minimum deduction allowed).

One decision from earlier this year by a bankruptcy judge in the Eastern District of Wisconsin analyzed this issue and found that six judges in six different districts had concluded that a debtor may not deduct a vehicle ownership expense if the debtor does not actually have a note or lease payment, while six judges in five districts have concluded that a debtor may deduct a vehicle ownership expense regardless of whether the debtor actually has a note or lease payment. *In re Sawdy*, ___ B.R. ___, 2007 WL 582535 at *4 (Bankr. E.D. Wis. Feb. 20, 2007). The *Sawdy* court then proceeded with an extensive analysis of the rationales used by the courts on both sides of this issue and concluded that the debtors were entitled to deduct the IRS Local Standard expense amount for vehicle ownership even though the vehicles were unencumbered. *Id.* at *15. Even though the *Sawdy* case was under Chapter 13 of the Bankruptcy Code, the analysis of the vehicle ownership deduction is equally applicable to Chapter 7 cases.

Rather than restate the extensive analysis engaged in by the *Sawdy* court, this Court will simply adopt the rationale in that case. The use of "applicable" in the statute refers to the Local Standard and does not require that there be a loan or lease on the vehicle. It simply would not make sense to deny an ownership expense deduction to a debtor owning a vehicle free and clear while allowing the deduction to a debtor who has encumbered his or her vehicle with a loan, regardless of the size of the loan. Debtors are entitled to an ownership deduction in the amount of the Local Standard ($332.00) for the second vehicle on Line 24 of the means test form.

401(k) Contributions and Loan Payments.

Debtors' amended means test form includes on Line 26 "mandatory payroll deductions" in the amount of $1,191.88. That amount appears to be made up of 401(k) contributions of $342.33 and 401(k) loan payments of $849.44 per month.

As far as the 401(k) contributions are concerned, there is no evidence that such contributions are "mandatory." In fact, 401(k) plans by their very nature are voluntary contributions by a debtor into a retirement savings account for the benefit of the debtor. Line 26 of the means test form even states, in bold face type "**do not include discretionary amounts such as non-mandatory 401(k) contributions.**" Accordingly, those voluntary payroll deductions for contributions to a debtor's retirement plans are not, by definition, "mandatory payroll deductions." Thus, Debtors are not entitled to a deduction for the same in their means test form.

The 401(k) loan payments of $849.55 per month present a more difficult problem. Debtors each presented affidavits (Fil. #27 and #28) stating that their employer has informed them that repayment of the 401(k) loans are not discretionary. Courts have struggled with whether deductions are allowed for 401(k) loan repayments because, while the payroll deductions for repayment of a loan may be mandatory, the payments nevertheless represent repayment of voluntary retirement contributions. *Compare In re Thompson*, 350 B.R. 770 (Bankr. N.D. Ohio 2006) (holding that 401(k) loan payments, while not properly classified as "other necessary expenses" could be classified as "payments on account of secured debts" and further holding that the obligation to repay a 401(k) loan presented special circumstances justifying additional expenses) *with In re Lenton*, 358 B.R. 651 (Bankr. E.D. Pa. 2006) (holding that 401(k) loan payments were not necessary expenses nor payments on secured debts which could be deducted from current monthly income under the means test but that the obligation to repay the loans constitutes a special circumstance which rebuts the presumption).

Even though the 401(k) loan payments are mandatory, according to Debtors' affidavits, it is clear that such payments are not "mandatory payroll deductions" that can be deducted as "other necessary expenses" under Line 26 of the means test form. Specifically, 11 U.S.C. § 707(b)(2)(A)(ii)(I) prohibits deduction of "any payments for debts" when calculating the various expense deductions. Further, there is no evidence that the loans are secured. Even if the loans have some right of setoff against remaining 401(k) account funds, such funds are not property of the bankruptcy estate. Thus, the payments on the 401(k) loans also cannot be deducted on Line 42 as payments on secured debt.

However, notwithstanding that finding, this Court agrees with the *Thompson* and *Lenton* courts that the mandatory nature of the payments is a factor to be considered as a "special circumstance" to rebut the presumption of abuse. The BAPCPA amendments to the Code support the mandatory nature of payroll withholding for 401(k) loan payments by specifically providing that the automatic stay does not apply to such withholding. 11 U.S.C. § 362(b)(19). Also, the only evidence available is that the loans were used to pay living expenses and unsecured debt and Debtors

have no reasonable alternative to payment of the loans. So, Debtors may deduct the 401(k) loan payments as an additional expense in an effort to rebut the presumption of abuse.

Calculation of Payment on Secured Debts.

On Line 42 of the means test form, Debtors are allowed to deduct their average monthly payment on secured claims. The average monthly payment is the total of all amounts contractually due to each creditor in the 60 months following the filing of a case, divided by 60. Debtors appear to have included their pre-bankruptcy monthly payment amount in Line 42 rather than using the calculation provided by Line 42, which incorporates the calculation of 11 U.S.C. § 707(b)(2)(A)(iii). The U.S. Trustee has recalculated those amounts in accordance with the statute based upon the numbers provided in reaffirmation agreements filed with the secured creditors. Thus, as asserted by the U.S. Trustee, Debtors are entitled to a total deduction on Line 42 of $341.05 rather than $667.75.

## *Conclusion*

If the foregoing adjustments to the vehicle ownership expense[2] and mandatory payroll deductions (including the 401(k) loan deduction as a special circumstance) are made to the modified means test form prepared by the U.S. Trustee, the means test form still produces monthly disposable income of $414.23, which results in 60-month disposable income of $24,853.80. Thus, the presumption of abuse would still arise. Certainly, Debtors will assert that there are other adjustments to expenses made by the U.S. Trustee to which Debtors disagree. However, even if those adjustments reduce disposable income to the point that the presumption does not arise, this Court is then compelled to consider the U.S. Trustee's dismissal request under 11 U.S.C. § 707(b)(3). Under that section, when the presumption of abuse does not arise, in determining whether the granting of relief would be an abuse of the provisions of Chapter 7, this Court is to consider the totality of the circumstances of Debtors' financial situation.

According to the affidavits presented by Debtors, one of their 401(k) loans will be paid in full in approximately 16 more months and the other will be paid in full in approximately 13 more months. The completion of those payments in a little more than a year will free up approximately $850.00 per month in disposable income that could be used to fund a Chapter 13 plan. Debtors' ability to repay creditors under a Chapter 13 plan is a primary factor to be considered in applying the totality of the circumstances test under § 707(b)(3). *In re Gannon*, Case No. 06-41399 (Bankr. D. Neb. Feb. 28, 2007).

Thus, even if further adjustments to Debtors' expenses were warranted to the point that the presumption of abuse does not arise, this Court finds that under the totality of the circumstances of this case, Debtors do have the ability to repay creditors under the term of a Chapter 13 plan.

---

[2] Line 22 for vehicle operation expense would also necessarily be adjusted downward by $200.00 to eliminate the additional $200.00 operating deduction that the U.S. Trustee allowed as an alternative to the vehicle ownership expense for the second vehicle.

-7-

Therefore, the U.S. Trustee's motion to dismiss (Fil. # 19) is granted. Debtors shall have until June 15, 2007, to file a motion to convert this case to a proceeding under Chapter 13. If a motion to convert the case is not filed by that date, it will be dismissed upon the filing of an affidavit by the U.S. Trustee.

Separate order to be filed.

DATED: May 21, 2007.

BY THE COURT:

/s/ Thomas L. Saladino
United States Bankruptcy Judge

Notice given by the Court to:
    Steven P. Vinton
    *Jerry L. Jensen/U.S. Trustee
    Philip M. Kelly

Movant(*) is responsible for giving notice to other parties if required by rule or statute.